(July 18, 1988)

■ In the Matter of PAUL V. OLIVER, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Petitioner Committee on Professional Standards moves to confirm in part and disaffirm in part the Referee's report, issued following a hearing, which sustained those portions of two charges of professional misconduct against respondent accusing him of conduct with respect to two clients that adversely reflected on his fitness to practice law, but which rejected those portions of the two charges accusing respondent of having engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and of having accepted employment when his professional judgment on behalf of a client might have been affected by his

own financial, business, or personal interests. Respondent cross-moves to confirm the Referee's report in its entirety.

Respondent, an attorney admitted to practice by this court in 1975, maintains an office for the practice of law in the City of Albany.

In 1983 or 1984, respondent contacted one Mary Hannay at the behest of the Albany City Housing Department. Hannay, a woman in her sixties, was seriously ill with emphysema and required the assistance of oxygen tanks and tubes to breathe. At the hearing before the Referee, respondent described her as difficult to deal with and severely estranged from her relatives. Respondent and his family eventually befriended Hannay and helped her with her living arrangements, which were complicated by her special medical needs, her desire to live in motels, and her intermittent hospitalizations. Hannay evidently developed a certain reliance upon respondent and his family and may also have developed some empathic feelings because respondent's father-in-law also apparently suffered from emphysema. The relationship included occasional discussions between respondent and Hannay concerning her will and estate. These discussions climaxed on Friday, April 26, 1985, when respondent visited Hannay at the hospital where she had just undergone a tracheotomy. Hannay, according to respondent, directed him to draft a will naming his mother-in-law, whom Hannay had never met, as sole beneficiary. Respondent returned to the hospital the following day with the will, which he had typed himself; Hannay signed the will and respondent and his wife witnessed her signature. Respondent claims he suggested to Hannay that there might be more appropriate recipients of her bounty than his mother-in-law, that another attorney should be involved in the drafting and execution of the will, and that hospital medical staff might be better witnesses to the execution of the will than he and his wife, but that Hannay vigorously resisted his advice and, in view of her precarious medical condition, he acceded to her wishes. Hannay died in June 1985. Her will was probated in the Albany County Surrogate's Court in 1986 and, apparently, was not contested.

The Referee rejected that portion of charge I which, with respect to the Hannay will, accused respondent of engaging in dishonest and misleading conduct and preparing a will which was affected by a financial, business, or personal interest, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and DR 5-101 (A), respectively. Because we find that the Referee properly could, and did, credit respondent's testimony

concerning the circumstances of the Hannay will, and that such testimony provides a plausible explanation of the terms, drafting, and execution of the will which belies any dishonesty or desire to mislead and which indicates that Hannay consented to the unusual terms and procedure after full disclosure, we confirm the Referee's rejection of that portion of charge I alleging violation of DR 1-102 (A) (4) and DR 5-101 (A). However, we find that the Referee properly sustained that portion of charge I alleging that respondent engaged in conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (A) (6). The circumstances of the instant will, namely a sizable bequest from an ill and lonely woman to her attorney's mother-in-law, under the circumstances described above, clearly give the appearance of impropriety *(see,* Code of Professional Responsibility Canon 9). At a minimum, respondent should have insisted that another attorney participate in the preparation or execution of the will or involved a disinterested third party who could later attest to the voluntary nature of the bequest; absent such outside involvement, respondent should have withdrawn from the representation. *(See generally, Matter of Putnam,* 257 NY 140, 143; *Matter of Sherbunt,* 134 AD2d 723, 724; de Furia, *Testamentary Gifts From Client to the Attorney-Draftsman: From Probate Presumption to Ethical Prohibition,* 66 Neb L Rev 695 [1987].)

Charge II accuses respondent of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and in conduct adversely reflecting on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (6), respectively. The single specification cites investments respondent made in a small toy doll corporation, Designs by Elizabeth, on behalf of one Arthur Fidler under a power of attorney. Respondent became acquainted with Fidler, who was in his seventies, through his employment as an attorney for the Albany County Department of Social Services. Respondent was the incorporator of Designs by Elizabeth, owned 99 of the 200 outstanding shares, and was an officer of the corporation. From August 16, 1984 through January 23, 1985, respondent made at least 15 transfers of moneys from Fidler to the corporation's bank account. The transfers, made in amounts of $500 or $1,000, totaled $12,500. The evidence concerning Fidler's knowledge of and authorization of the transfers is conflicting and, although respondent testified that he prepared 12½% promissory notes evidencing the corporation's indebtedness to Fidler, he is unable to produce the originals or copies of the notes. However, there is no

evidence in the record that any of the transferred moneys went other than into the corporate bank account of Designs by Elizabeth. The corporation went out of business in 1985 when the proprietor became ill; she is now dead as is Fidler, who died in 1986.

The Referee rejected that portion of the charge alleging dishonesty, fraud, deceit or misrepresentation, and we confirm. At the hearing before the Referee, respondent provided a plausible and consistent account of his dealings with Fidler which belied any intent to defraud or mislead his client, an account which the Referee could properly credit. On the other hand, we also confirm the Referee's finding that respondent engaged in conduct which adversely reflected on his fitness to practice law. Respondent's investment of his client's moneys in a speculative toy business, utilizing an odd transfer schedule, with little or no documentation to insure that his client's investment would be either profitable or secure, especially when respondent had a financial stake in the business, clearly gave the appearance of impropriety in violation of Canon 9 of the Code of Professional Responsibility and therefore adversely reflected on his fitness to practice law.

Two basic considerations influence our determination of an appropriate disciplinary sanction in this matter. First, respondent is guilty of that sort of misconduct which obviously lowers the esteem of the public for the legal profession. On two occasions, respondent permitted elderly and somewhat vulnerable clients to become dependent on him, which dependencies led to, in one case, an unusual bequest to his mother-in-law and, in the other case, an odd series of investments in a speculative company in which respondent had a financial interest. The appearance of impropriety is clear and a violation of Code of Professional Responsibility DR 1-102 (A) (6) is evident. Second, respondent does not have an unblemished disciplinary history. In 1983, respondent received a letter of admonition from the Committee for neglecting a personal injury action and for failing to cooperate with the Committee. In November 1984, respondent was personally admonished by the Committee for neglect of an action seeking commissions allegedly due his client and for failure to cooperate with the Committee. In April 1987, this court censured respondent for his neglect of three legal matters, failure to cooperate with the Schenectady County Surrogate and the United States Bankruptcy Court, and failure to cooperate with the Committee (*Matter of Oliver*, 129 AD2d 884).

In order to deter similar misconduct and preserve the

reputation of the Bar, we conclude that respondent should be suspended from the practice of law for a period of six months.

Respondent suspended from the practice of law for six months and until further order of the court, the date of commencement to be fixed in the order to be entered hereon. Kane, J. P., Casey, Yesawich, Jr., Harvey and Mercure, JJ., concur.